## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| **LESLIE FRED DANNER** and ) | Case No. 11-00651-TLM |
| **TERRIANN RENE DANNER,** ) | |
| ) | Chapter 11 |
| **Debtors.** ) | |
| _____ ) | |

### MEMORANDUM OF DECISION

**INTRODUCTION**

In this chapter 11 case, the debtors in possession, Leslie and Terriann Danner ("Debtors"), filed an Application for approval of employment of Bauer & French ("Counsel") as attorneys for Debtors. Doc. No. 7 ("Application").[1] The Court set the Application for hearing *sua sponte*. Doc. No. 22. Subsequently, the Office of the United States Trustee ("UST") filed an objection to the Application. Doc. No. 34.

The Application came on for hearing on April 18, 2011, and was taken under advisement thereafter. This Decision constitutes the Court's factual findings and legal conclusions. Fed. R. Bankr. P. 7052, 9014.

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11, U.S. Code §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure 1001-9037.

MEMORANDUM OF DECISION - 1

**BACKGROUND AND FACTS**

Debtors filed their chapter 11 case on March 16, 2011. Doc. No. 1. That same day, Debtors filed the Application to employ Counsel. Doc. No. 7. Debtors request that the Court approve their employment of Counsel to provide certain identified services and "to perform all other legal services for Debtor-in-Possession which may be necessary herein." *Id.* at 2 ¶ 7.[2] In regard to the terms of employment, the Application states:

> 9. The terms of employment of BAUER & FRENCH agreed to by the Debtor-in-Possession, subject to the approval of the Court, are that they will undertake this representation at their normal hourly rate of $225.00 per hour for Randal J. French; $200.00 per hour for Robin Long and $125.00 per hour for Jared C. Hoskins.
>
> 10. The firm of BAUER & FRENCH represents no interest adverse to the Debtor-in-Possession or the estate in the matters upon which they are to be engaged for the Debtor-in-Possession, and their employment would be in the best interest of this estate. Debtor-in-Possession has paid $8,539.00 as an advance payment retainer to file the Debtor-in-Possession's chapter 11. From that retainer, Debtor-in-Possession has paid $1,039.00 for the chapter 11 filing fee and $7,500 as advance payments. At appropriate times, counsel will account for services rendered compared to the advance payment made for services.
>
> WHEREFORE, Debtor-in-Possession prays that its employment of the said firm of BAUER & FRENCH under the terms specified to

---

[2] Notwithstanding this broad and effectively unqualified assertion, the Rule 2016(b) disclosure of compensation filed by Counsel, Doc. No. 9, deletes from the "agreed . . . legal service[s]" to be rendered "[r]epresentation of the debtor in adversary proceedings and other contested bankruptcy matters." *Id.* ¶ 5. This deletion appears inconsistent with the otherwise expressed intent of the parties. Further, a declination by counsel for chapter 11 debtors in possession to handle "contested matters" raises a serious issue. Given the Court's rulings, *infra*, it need not today reach either of these concerns.

MEMORANDUM OF DECISION - 2

represent Debtor-in-Possession in this case under Chapter 11 of the Bankruptcy Code be approved by the Court, and that it have such other and further relief as is just.

*Id.* at 2–3.

Accompanying the Application was the verified statement of Counsel as required by Fed. R. Bankr. P. 2014(a). Doc. No. 8 ("Verified Statement"). In addition to the required disclosures and verifications of lack of adverse interest required under Rule 2014(a) and case law, Counsel therein states:

> 5. I have received $7,500 as an advance payment to file the Debtor-in-Possession's chapter 11, plus $1,039 as a filing fee. From that retainer, I have applied $7,500 as an advance payment retainer. At an appropriate time, I will account for all services rendered, and refund any unearned retainer or seek additional compensation if the fees for services rendered exceeds the amount of the advance payment retainer. From that retainer, I have paid $1,039 for the chapter 11 filing fee. No other attorney fees will be paid, pending further court order after notice to all parties in interest and a hearing on applications as are required by the applicable rules. I have received no other funds from Debtor-in-Possession, or for their benefit, in the one year prior to the filing of the petition in this case.

*Id.* at 2.[3]

At the hearing, Counsel confirmed that, in accord with how it and Debtors

---

[3] Idaho Rule of Professional Conduct 1.5(b) states that "the scope of representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing." Local Bankruptcy Rule 2014.1(a)(1) requires that "any written retainer agreement shall be attached to the [§ 327(a)] application." Counsel attached its written "Chapter 11 Fee Agreement" with Debtors to the 2016(b) disclosure. *See* Doc. No. 9 at 2–3. (That it was attached to the wrong document was thus an error, but not a material one.) The terms of the fee agreement are similar to and consistent with those addressed in the Application, Verified Statement and Counsel's briefing.

MEMORANDUM OF DECISION - 3

intended the agreement to work, the $7,500 "advance payment retainer" was not deposited in a client trust account but was instead placed in Counsel's general business account, treated as fully earned, and thus available for Counsel's use and disposition as it saw fit. That is to say, it was not placed in any separate account or otherwise segregated. *See* Doc. No. 35 at 2–3 (Counsel's response to UST objection, acknowledging the funds went into Counsel's general business account and that no funds were held in trust). Yet Counsel indicates, in replying to the UST's objection and in argument, that Debtors retain the right to a review and accounting of the services rendered, and the right to a refund of any portion of the $7,500 that is in excess of the value of the services rendered. *See* Doc. No. 9 at 2 ¶ 3 (fee agreement).

By all accounts, the $7,500 was, in intent and effect, a prepayment of fees to be later incurred for services that would be rendered Debtors in their chapter 11 case. Counsel further explained that it did not anticipate that Court approval would be sought for any of the services which were to be performed and "paid" by the $7,500 advance payment; rather, the comments in the fee agreement and elsewhere about obtaining approval of fees under the Code on notice and hearing (*i.e.*, under § 330 and § 331) referred to any fees for services rendered after the $7,500 was exhausted.

MEMORANDUM OF DECISION - 4

**DISCUSSION AND DISPOSITION**

The issue presented is whether Debtors' employment of Counsel should be approved. The Code provides in § 327(a) that "the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." Under § 1107, Debtors, as chapter 11 debtors in possession, exercise this right of a trustee to employ an attorney. The Code gives the bankruptcy court wide discretion to approve or deny the employment of an attorney by the estate. *See Movitz v. Baker (In re Triple Star Welding, Inc.)*, 324 B.R. 778, 781 (9th Cir. BAP 2005). This discretion must be exercised in a way that best serves the objectives of the bankruptcy system. *See Harold & Williams Dev. Co. v. United States Trustee (In re Harold & Williams Dev. Co.)*, 977 F.2d 906, 909–10 (4th Cir. 1992) ("Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.").

There is no argument presented that Counsel is ineligible to be employed due to holding or representing an adverse interest or because Counsel is not disinterested. The issue presented, rather, involves the terms on which Counsel

MEMORANDUM OF DECISION - 5

seeks to be employed.

The Court and UST expressed concern over operation of the "advance payment retainer" as conceived and intended by Counsel and Debtors.[4] Under that conception, Counsel is free to immediately receive and retain, not in trust for Debtors but as its own, the $7,500 "retainer" amount. Counsel argues that the $7,500 is not property of the estate and may therefore be applied to its post-petition fees without having to first obtain Court approval under § 330 or § 331.[5] Counsel acknowledges that the yet-to-be-performed services that will be compensated through the $7,500 would be reviewable by parties in interest (including Debtors) or the Court through § 329(b).[6] Counsel further suggests that any approval of compensation under § 330 or § 331 will occur only after the $7,500 is consumed, and only if Counsel determines that it wishes to seek

---

[4] This is not the first time Counsel has brought this particular issue before the Court. In the case of *Mac and Dianne Mayer*, Case No. 10-02238-TLM, the Court agreed with the UST and rejected this suggested approach to compensation in an oral ruling on January 24, 2011, and entered an Order approving employment but requiring the $7,500.00 paid in that case to be held in trust as a security retainer. *See* Case No. 10-02238-TLM at Doc. No. 104. The case was then converted to chapter 7 on February 3. *Id.* at Doc. No. 106. After the Court denied Counsel's request to alter or amend the decision, Counsel, on April 5, 2011, appealed to the Bankruptcy Appellate Panel. *Id.* at Doc. Nos. 141 & 149.

[5] Section 330 authorizes the bankruptcy court, after notice and a hearing, to award an attorney employed under § 327 "reasonable compensation for actual, necessary services rendered." Under § 331, such a process can occur every 120 days, or more often should the Court determine on request that there is cause for greater frequency.

[6] Section 329(b) provides that if the compensation paid or agreed to be paid and disclosed under § 329(a) "exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive[.]"

MEMORANDUM OF DECISION - 6

payment for other and further services. The signal difference then between what Counsel here proposes and the far more common and traditional "security retainer" approach is the absence of application, notice, hearing and approval of compensation before the retainer funds are accessed in payment of allowed fees.

Striped to its essence, the so-called "advance payment retainer" of $7,500 is a payment made by Debtors before filing to ensure a source of compensation for a portion of legal services to be rendered in their bankruptcy case post-filing. The Court views that payment to be the equivalent of a traditional security retainer which became property of the bankruptcy estate on the petition date, despite Counsel's efforts to avoid such characterization and treatment by the title it chooses to bestow on the payment[7] and by depositing those funds directly into its general account, rather than holding them in trust. *See In re Ida-Man, Inc.*, 91 I.B.C.R. 199, 199–200 (Bankr. D. Idaho 1999)[8]; *see also In re Hathaway Ranch*

---

[7] Counsel attempts to make much of prior comments of this Court in *In re Dearborn Constr., Inc.*, 03.1 I.B.C.R. 17, 2002 WL 31941458 (Bankr. D. Idaho Dec. 20. 2002), arguing that it validates the approach now urged. While reference was made to "advance payment" retainers, *id.* at 20, *Dearborn* concerned a security retainer and discussion of advance payment retainers was, at best, dicta. In addition, the Court's characterization of advance payment retainers was to the effect that they were "in other words, a 'flat fee' arrangement," *id.* at 20 n.15, and therefore reviewable under § 329(b). Counsel eschews a true "flat fee" approach and instead seeks to have the benefits of both a flat fee and security retainer without the burdens accompanying either.

[8] *Ida-Man* stated: "[I]t remains clear to this Court that agreements for payment of fees before filing the petition, but in advance of counsel's performance of services in the bankruptcy case, are also subject to examination by the Court under the same provisions of the Code. Simply stated, 'advance payments', 'earned on receipt' retainers, 'minimum fees', or similar creative fee arrangements concocted by counsel are inappropriate in a bankruptcy setting. Monies tendered to
(continued...)

MEMORANDUM OF DECISION - 7

*Partnership*, 116 B.R. 208, 217–18 (Bankr. C.D. Cal. 1990).[9]  Therefore, any application of the $7,500 retainer to pay Counsel's fees for post-petition services would have to be preceded by an application under § 330 or § 331 and approval of the same following notice and hearing.[10]

Moreover, Counsel's attempt to shield the $7,500 retainer from the strictures of § 330 and § 331 by refusing to hold those funds in trust appears to be at odds with applicable ethical rules.  The Idaho Rules of Professional Conduct ("I.R.P.C.") are applicable to attorneys in this Court.  *See* Local Bankruptcy Rule 9010.1(g).  Under the I.R.P.C. a lawyer may require advance payment of a fee.  Comment [4] to I.R.P.C. 1.5.  However, legal fees and expenses that have been paid in advance must be deposited in a client trust account, separate from the

---

[8] (...continued)
counsel for a debtor prior to filing shall be treated as a traditional retainer to be held in trust." *Id.* (citations omitted).

[9] *Hathaway Ranch* discerned several reasons why the attempted use of advance fee payments was ineffective, noting *inter alia*: "[A]dvance fee payments, no matter how described, are property of the bankruptcy estate and not of the professional.  The debtor in possession, as fiduciary to the bankruptcy estate, must maintain and account for all property of the estate to its creditors and to this court.  It is impossible for the debtor in possession to do so if its attorney has deposited an advance fee payment into its operating account and treats the funds as the professional's own money." 116 B.R. at 217–18.  It concluded that advance fee payments must be maintained in client trust fund accounts and not be drawn upon until the professional obtains an order allowing and authorizing payment of compensation under § 330 or § 331.  *Id.* at 218.

[10] Counsel objects to the delay in compensation caused by denying it access to the $7,500 retainer without first seeking Court approval – a delay inherent in the Code and Rules – as unduly onerous.  Yet chapter 11 debtors' attorneys regularly endure such delay.  Nor is Counsel entirely without recourse.  Section 331 allows an attorney to request, and the Court to allow, compensation more often than once every 120 days should cause exist for a greater frequency.

MEMORANDUM OF DECISION - 8

lawyer's property, to be withdrawn only as fees are earned or expenses incurred. I.R.P.C. 1.15(b). And any unearned portion of an advance payment must be returned to the client. I.R.P.C. 1.16(d) and Comment [4] to I.R.P.C. 1.5. Counsel did concede that it has an obligation, potentially and at some later point, to "account" to Debtors for the services rendered that are applied against that $7,500, and to refund any "unearned" amount. But the I.R.P.C. requires more than an accounting and refund, it requires that advance payments be held in trust.

This requirement is significant. As the court in *In re GOCO Realty Fund I*, 151 B.R. 241 (Bankr. N.D. Cal. 1993), noted, a prepetition retainer becomes property of the estate if, under applicable state law, the debtor has an interest in the retainer at the time of the filing of the case. *Id.* at 250 (citing *In re McDonald Bros. Const., Inc.*, 114 B.R. 989 (Bankr. N.D. Ill. 1990)). It also stated:

> Applying California law, there may be no difference in treatment of a security retainer and an advance payment retainer. Unearned fees in an attorney's possession must be available for refund to the client. ... Rule 4-100(A) of the Rules of Professional Conduct of the State Bar of California, effective May 1989 (formerly Rule 8-101), mandates that an attorney segregate and deposit client trust funds into a trust account and not in the attorney's general operating account. Courts interpreting former Rule 8-101 note an intent by the State Bar that the client retain an ownership interest in the retainer unless the agreement provides for a "classic retainer."

*Id.* at 251 (citations omitted).

Debtors had an interest in the $7,500 paid to Counsel, even if characterized as an advance payment, and that interest is expressly recognized under the I.R.P.C.

MEMORANDUM OF DECISION - 9

which also required Counsel to segregate such funds and hold them in a client trust account. Such an interest renders the retainer here property of the estate, and necessitates compliance with § 330 and § 331 before application of such funds in payment of post-petition services.

**CONCLUSION**

Counsel is skilled and well qualified to serve as attorneys for a chapter 11 debtor in possession. There would be no evident reason, on the present record, to withhold approval of employment including, if properly documented and requested, approval of a $7,500 security retainer with compensation subject to interim and final allowance under § 330 and § 331.[11]

However, Counsel and Debtors seek approval of employment upon the specific terms proposed, and ask this Court to sanction a fee arrangement designed to skirt the compensation approval procedures of the Bankruptcy Code. Having determined that, although creatively advanced and ably argued, such terms and conditions are inconsistent with the policies and provisions of the Code, as well as the Idaho Rules of Professional Conduct, the Court concludes that such approval

---

[11] The Court recognizes, particularly given its experience in *Mayer*, *see* note 4 *supra*, and other of Counsel's recent cases, that Counsel's vision of the operation of the "advance payment retainer" approach allowed all amounts to be immediately deposited into Counsel's business account and expended as Counsel deemed appropriate without limitation (other than the client's right to later seek an accounting and refund of "unearned" fees). Some portion of these fees paid in advance would be consumed by services rendered between payment and the filing of the petition, thus not all of the $7,500 would necessarily exist at filing.

MEMORANDUM OF DECISION - 10

would be inappropriate. The UST's Objection will be sustained, and the Application will be denied.

The Court will enter an Order in accord with this Decision.

DATED: May 26, 2011

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE